IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CAROLENE BARNETTE § | |
| § | |
| VS. § | CA No._____ |
| § | |
| SUN LIFE ASSURANCE COMPANY § | |
| OF CANADA, HEICO HOLDING, INC., § | |
| AND HEICO HOLDINGS EMPLOYEE § | |
| WELFARE BENEFIT PLAN § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Carolene Barnette, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against Sun Life Assurance Company of Canada, Heico Holding, Inc., and the Heico Holdings Employee Welfare Benefit Plan, Defendants.

## I.
## PARTIES

1. Plaintiff, Carolene Barnette ("Barnette"), is a resident citizen of Harris County, Texas.

2. Defendant, Sun Life Assurance Company of Canada ("Sun Life"), is a domestic or foreign insurance company doing business in various states including in the State of Texas. It maintains offices and a claims facility in Texas. It may be served with process by serving its registered agent, C T Corporation System, 350 North St. Paul Street, Dallas, TX 75201, or wherever it may be found.

3. Defendant, Heico Holding, Inc. ("Heico") is a domestic or foreign corporation doing business in the State of Texas and may be served with processes by serving its

1

      registered agent, CT Corporate System, at 208 So. Lasalle Street, Suite 814, Chicago, IL, 60604, or wherever it may be found.

4. Defendant, the Heico Holdings Employee Welfare Benefit Plan (the "Heico Plan"), is an employee welfare benefit plan of Heico Holding, Inc. Heico Holding, Inc. is the Plan Sponsor. The Plan may be served by serving the Benefits Administrative Committee at 6565 Fannin Street, Houston, Texas 77030, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

5. This action against Sun Life, Heico and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

6. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintains business activity in and may be found it this district.

7. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024 by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

8. Sun Life is an insurance company offering a variety of insurance products and services. The products include life insurance, accidental death insurance, disability insurance and a range of other insurance products offer to the public. A number of these insurance products were offered and sold to designated employees of Heico or

some of its subsidiary companies through the Heico Plan. One of the covered subsidiaries was KenMor Electric Co., LP.

9. This is an action to recover, among other things, life insurance benefits owed on the life of Guy Barnette. Guy Barnette was an employee KenMor Electric Co., LP ("KenMor Electric"), a subsidiary of Heico. Carolene Barnette is Guy Barnette's surviving spouse and beneficiary of his various insurance coverages, including that provided by Sun Life.

10. Guy Barnette was a long time employee of KenMore Electric. He was hired by KenMore in 1985, and remained in its employ until January 1, 2013 when his employment ended. Barnette was terminated from his employment when he was no longer able perform his job duties because of his deteriorating health.

11. Before Guy Barnette's employment ended, he was a Plan participant and maintained life insurance coverage through the Plan with Sun Life. That coverage included Basic Life Insurance coverage in the amount of $92,000, and Employee Optional Voluntary Life or Supplemental Life insurance coverage in the amount of $122,000. It was all provided under Sun Life's Group Policy No. 26723 (the "Policy").

12. Shortly before the termination of Guy Barnette's employment, Carolene Barnette initiated contact with the HR department of KenMore to make arrangements for end of employment matters in light of his deteriorating health. This included successfully arranging for the continuation of his health insurance under COBRA. Barnette began paying for his COBRA insurance coverage in January of 2013. Josie Garcia, the Human Resources Manager, undertook to assist Mr. Barnette with his benefits including assisting him in his desire to keep his life insurance coverage with

Sun Life. She informed Ms. Barnette that she would timely send them the paper work to do so.

13. On a number of occasions after the termination of Barnette's employment, Ms. Garcia was contacted requesting the appropriate forms and paper work to be submitted to keep his life insurance. Finally, on February 20, 2013, Josie Garcia completed the Employer Information section of a Sun Life Portability Notice and signed it as the employer's representative ("Portability Notice"). That Portability Notice was forwarded to the Barnettes.

14. On February 22, 2013, Guy Barnette completed the General Information and Beneficiary sections of the Portability Notice and signed it. Ms. Barnette contacted Sun Life by phone on or about the 20th or 23rd of February to inquire of requirements to complete the porting of the life insurance coverage and with other questions about this paper work. To her complete shock and surprise, Mrs. Barnette was informed by the Sun Life representative that it was too late to submit the Portability Notice since it was beyond 31 days from the termination of Mr. Barnette's employment. Because of that information, the Portability Notice was not then sent it to Sun Life. She was told by Sun Life it was too late and she relied on that information. Unbeknownst to Ms. Barnette, this was not true.

15. Mrs. Barnette promptly contacted Garcia in Human Resources to explain what she had been told by Sun Life. Josie Garcia volunteered to assist in correcting thsi situation including contacting the John C. Quebe, the President of Heico's subsidiary for assistance or to intervene with Sun Life. Ms. Barnette also made efforts to contact Mr. Quebe on her own for assistance. Her calls were not returned, and no

assistance was forthcoming from Mr. Quebe or ultimately from Ms. Garcia.

16. Additional efforts were made to contact Mr. Quebe were made by Mrs. Barnette's then counsel without a response. That effort was documented in a letter, dated February 25, 2014, to Quebe. No response to this letter was ever received.

17. Further efforts were made to address this situation. By letters dated, July 3, 2014, to both KenMor Electric and Sun Life, inquiry was made of the Barnette Application for Portable Group Life Insurance and the filing of a claim. The response from Sun Life advised of the 31 day deadline for requesting Portability, that it had expired, and the policy terminated.

18. Guy Barnette died on October 29, 2013. At the time of his death, there was no Sun Life policy on his life available for his surviving spouse.

19. The Notice of Portability form was intended to initiate the process of porting Barnette's life insurance following his termination. It may have also been the requisite procedure to initiate the continuation of his life insurance coverage under other provisions of the Policy.

20. In addition the Portability provision in the Policy, the Policy also contained an Accelerated Benefit provision. Under the Accelerated Benefit option, an employee suffering from a terminal illness, upon request, was entitled to obtain an Accelerated Benefit of up to 75% of the life insurance in force as of the date of his written request. The remaining amount of the insured's life insurance coverage would be subject to the policy terms and conditions. This Accelerated Benefit was payable in a lump sum.

21. On information and belief, neither Josie Garcia nor any other Human Resources

personnel acting on behalf of the employer or the Plan informed Guy Barnette of this aspect of his coverage, explained this aspect of his cover, gave him notice of this coverage option, or otherwise offered to assist him in accessing this coverage at any time during his employment or immediately thereafter.

22. The Policy also had a Continuation of Life Insurance coverage provision if the employee was Totally Disabled. This provision permitted the employee to continue his life insurance coverage for up to 6 months with the payment of premiums if his life insurance terminated while he was Totally Disabled. Similar to the Portability provision, it required the employee's election of this continuance of coverage and the payment of the required premium within 31 days of the termination of his life insurance. Guy Barnette met the basic requirements for the continuation of coverage under this provision, but he was neither informed of this aspect of his Policy coverage, had explained this aspect of his coverage or offered to explain, given notice to the Barnettes of this coverage option, or otherwise offered assistance in accessing this coverage at any time during his employment or immediately thereafter.

23. The Policy also had a Conversion Privilege. That provision permitted the employee to apply for an individual policy on his own life if, among other things, his life insurance coverage with Sun Life ceased with the termination of his employment. The amount of the life insurance coverage that could be applied for under this conversion provision was the amount of the coverage that ceased. The individual policy that would be issued would be without requiring Evidence of Insurability. Guy Barnette met the basic requirements for the Conversion Privilege, but he was

neither informed of this aspect of his Policy, given an explanation of this aspect of his coverage, given notice of this coverage option, or otherwise offered assistance in accessing this coverage at any time during his employment.

## CLAIM FOR EQUITABLE RELIEF

24. Congress designed ERISA to promote the interests of employees and their beneficiaries in employee benefit plans. Plan fiduciaries are obligated to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

25. The ERISA fiduciary duty includes the common law duty of loyalty which requires the fiduciaries to deal fairly and honestly with beneficiaries. It also imposes an affirmative duty on the fiduciaries to convey complete, thorough, and accurate information that is material to a beneficiary's claim and circumstance. The circumstance here was a desire to continue with his life insurance coverage with Sun Life following the termination of his employment.

26. This obligation on fiduciaries includes an obligation to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do in order to continue the basic life and supplemental life insurance coverage.

27. Heico was the Plan Sponsor and Barnette's employer by definition. Sun Life was the Claims Administrator for the Plan. Both were fiduciaries obligated to act in accordance with the terms of the Plan and in a manner consistent with their fiduciary obligation to Guy Barnette as a Plan participant and Carolene Barnette, a

Plan beneficiary. Guy Barnette and Carolene Barnette relied on these defendants to honor his wishes to maintain his life insurance coverage, act prudently in doing so, and give him honest and accurate information material to keeping this coverage as he coped with a terminal illness. Defendants failed in this regard and breached their fiduciary obligations to the Barnettes. Denial of Keith's life insurance claim was in defiance of his expressed desire and resulted in harm to Keith. Their respective breaches resulted in the loss of the life insurance benefits provided under the Plan.

28. Before the termination of Guy Barnette employment, Josie Garcia undertook to assist the Barnettes in the continuation of his life insurance following termination. At all material times, she was acting on behalf of Heico and the Plan and acting in a fiduciary capacity in that regard.

29. Not only is the fiduciary obligated to convey accurate material information, it also has an affirmative obligation to correct a participant's incorrect information or misunderstanding of the terms of the Plan or coverage options. The fiduciary is also obligated to adequately train its personnel so that misinformation about the Plan, terms of the Plan, and procedures necessary to effect and deliver coverage to the Plan participates and beneficiaries does not occur. Upon Ms. Barnette's inquiry directly to Sun Life, she was given incorrect information. On information and belief, this occurred because the employee conveying that information was not adequately trained to explain coverages and the criteria for continuing coverage. The Policy permitted the consideration of a portability application as late as 60 days from the date of termination of coverage. The information by Sun Life's personnel cause the failure to submit the application within that time frame.

30. The conduct recited in this complaint shows Garcia breached her fiduciary obligation to the Barnettes. In addition to failing to timely deliver the paper work to port the Sun Life policy, she may also have supplied the wrong form to continue Barnette's life insuranace coverage. In addition, as noted in this complaint she failed to counsel with and explain the other means available to continue that coverage. This conduct constituted a breach of the fiduciary duty owed the Barnettes and resulted in the loss of life insurance benefits at the time of his death.

31. Carolene Barnette thus seeks appropriate equitable relief from the fiduciary breaches of Defendants. This relief includes, but is not limited to (1) an equitable surcharge for unjust enrichment to recover the benefits loss or withheld and to make the ERISA beneficiary whole, (2) reformation of the Plan to the extent needed to equitably address and pay her claim for the entirety of the life insurance benefits that she should be entitled to, and (3) waiver or equitable estoppel preventing Sun Life, Heico, and the Plan from relying on the misinformation or the failure to give correct and accurate information to the Barnettes as grounds for denial her claim for life benefits. Carolene Barnette further seeks any other equitable relief the Court deems necessary and proper to protect her from a loss as a result of such violations, all pursuant to 29 U.S.C. §§ 1132(a)(3).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

32. Barnette seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. Barnette is entitled to recover those fees together with his costs of court pursuant to 29 U.S.C. §1132(g).

33. Barnette further seeks prejudgment interest at the maximum rate permitted by law or in equity.

## VIII.
## PRAYER

34. Carolene Barnette, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendants Sun Life Assurance Company of Canada, Heico, and the Plan, and issue judgment against such defendants as follows:

   a. That Defendants pay to Plaintiff all benefits due and owing to Plaintiff consistent with the terms of the Plan and Policy as well as all interest due thereon and as allowed by law;

   b. That Defendants pay all reasonable attorney's fees incurred and to be incurred in obtaining the relief sought herein along with the costs associated with the prosecution of this matter;

   c. For all other such relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

By: s/_____
   **James C. Plummer**
   TBA #16075700
   Federal I.D. No. 3692
   **PLUMMER & KUYKENDALL**
   4203 Montrose Boulevard, Suite 270
   Houston, Texas 77006
   (713) 522-2887
   (713) 522-3605 (Fax)
   jplummer@plummerlawyers.com

   ATTORNEYS   FOR   PLAINTIFF

CAROLENE BARNETTE

OF COUNSEL:
Amar Raval
TBA #24046682
Federal I.D. No. 619209
Plummer & Associates
4203 Montrose Boulevard, Suite 270
Houston, Texas 77006
(713) 522-2887
(713) 522-3605 (Fax)
araval@plummerlawyers.com