United States District Court
Southern District of Texas
**ENTERED**
April 07, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLENE BARNETTE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-3720 |
| | § | |
| SUN LIFE ASSURANCE COMPANY | § | |
| OF CANADA, HEICO HOLDING, | § | |
| INC., and HEICO HOLDINGS | § | |
| EMPLOYEE WELFARE BENEFIT | § | |
| PLAN, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This employee benefits case is before the Court on Defendant Sun Life Assurance Company of Canada's ("Sun Life") Motion to Dismiss (the "Motion") [Doc. # 13]. Defendants Heico Holding, Inc. ("Heico") and Heico Holdings Employee Welfare Benefit Plan (the "Plan") filed a Joinder in the Motion to Dismiss [Doc. # 16]. Plaintiff Carolene Barnette ("Plaintiff") filed a Response [Doc. # 20] to the Motion to Dismiss, to which Defendant Sun Life replied [Doc. # 21]. Plaintiff filed a Sur-Reply [Doc. # 22]. The Motion is now ripe for determination. After carefully considering the parties' briefing, all matters of record, and the applicable legal authorities, the Court **grants in part and denies in**

**part** the Motion and **grants in part and denies in part** Plaintiff's request for leave to amend.

## I.   BACKGROUND

Plaintiff Carolene Barnette is the surviving spouse of Guy Barnette. First Amended Complaint ("Amended Complaint") [Doc. # 9], at 3, ¶ 9.[1] Plaintiff alleges that certain actions by Defendants precluded her from receiving benefits under a life insurance policy in Guy Barnette's name, which insurance policy is attached to the Motion as Exhibit A to the Declaration of Kristen Goodwin in Support of the Motion [Doc. # 13-1] (the "Policy"). Plaintiff alleges the following in support of her claim.

Guy Barnette was employed by KenMor Electric Co., LP ("KenMor") for almost 28 years. Amended Complaint [Doc. # 9], at 3, ¶¶ 9–10. KenMor is a subsidiary of Defendant Heico Holding, Inc. *Id.*, at 3, ¶ 9. During Guy Barnette's employment, he maintained life insurance coverage through the Plan. The policy, which was provided by Defendant Sun Life, included "Basic Life Insurance coverage in the amount of $92,000, and Employee Optional Voluntary Life or

---

[1]   The Motion was filed as a motion to dismiss the Original Complaint [Doc. # 1] and the references in the Motion are to that pleading. On January 29, 2016, Plaintiff filed the Amended Complaint [Doc. # 9] and the parties extended the deadlines for Sun Life and Heico to answer or otherwise appear in this action to February 15, 2016. *See* Letters of Agreement [Docs. # 11, # 12]. The Court deems the Amended Complaint the operative pleading and construes the Motion as a motion to dismiss the Amended Complaint.

2

Supplemental Life insurance coverage in the amount of $122,000." *Id.*, at 3, ¶ 11. Guy Barnette's employment was terminated on January 1, 2013, because his deteriorating health prevented him from performing his job duties. *Id.*, at 3, ¶ 10. Guy Barnette subsequently died on October 29, 2013. *Id.*, at 5, ¶ 18.

Carolene Barnette alleges that Defendants improperly impeded Guy Barnette from shifting his employer-based life insurance policy under the Plan to an individual policy following the termination of his employment. The Policy includes a "Portability Rider" that permits a Plan participant to convert his Sun Life insurance policy to individual coverage by written application "within 31 days following the date Life Insurance ceases" due to termination of his employment. Policy [Doc. # 13-1], at ECF page 74. Before Guy Barnette's employment was terminated, Plaintiff contacted KenMor's Human Resources department to discuss matters relating to her husband's benefits and arranged for continuation of his health insurance coverage under COBRA. Amended Complaint [Doc. # 9], at 3, ¶ 12. Regarding Guy Barnette's life insurance benefits, Carolene Barnette alleges she was in contact with Josie Garcia ("Garcia"), KenMor's Human Resources Manager. Garcia told Carolene Barnette that she would send the Barnettes the paperwork for Guy Barnette to maintain his life insurance as an individual policy. *Id.* The Amended Complaint does not state when this conversation with Garcia occurred. Garcia allegedly did not send the Barnettes the portability notice

3

containing the employer information until February 20, 2013. *Id.*, ¶ 13. Plaintiff alleges that Guy Barnette completed and signed the portability notice on February 22, 2013, but that when Plaintiff called Sun Life to inquire about the process for porting the life insurance coverage, she was informed that the deadline had already passed for submission of the portability notice. *Id.*, ¶ 14. Sun Life informed Plaintiff that the Policy required submission of the portability notice within 31 days of termination of a Plan participant's employment. *Id.*; *see also* Policy [Doc. # 13-1], at ECF page 74. Guy and Carolene Barnette accordingly did not submit the portability notice to Sun Life.

Plaintiff then contacted KenMor personnel to rectify the situation. According to the Amended Complaint, she spoke with Garcia shortly after Sun Life informed her that it was too late to port the Policy. Garcia offered to assist Guy Barnette with continuing his coverage, including by contacting John C. Quebe ("Quebe"), the President of KenMor. *Id.*, at 4–5, ¶ 15. Plaintiff and, subsequently, her counsel also attempted to contact Quebe. She alleges that she was unable to obtain assistance from KenMor personnel. *Id.*, at 5, ¶¶ 15–16. By letters to KenMor and Sun Life on July 3, 2014, Plaintiff inquired about the status of the request to port the Policy. Sun Life responded that the 31-day deadline had passed and that the Policy had terminated. *Id.*, ¶ 17. Plaintiff concedes that, at the time of Guy Barnette's death, he was not covered by a Sun Life policy. *Id.*, ¶ 18.

4

Defendants allegedly also failed to inform the Barnettes of three additional options available under the Policy: the Accelerated Benefit provision, the Continuation of Life Insurance Coverage provision, and the Conversion Privilege. The Accelerated Benefit entitled a terminally ill employee to obtain up to 75% of the coverage as a lump sum. *Id.*, at 5–6, ¶¶ 20–21. The Continuation of Life provision permitted an employee to continue coverage for six months if his employment was terminated while he was totally disabled. *Id.*, at 6, ¶ 22. The Conversion Privilege allowed an employee to apply for an individual Sun Life policy, which individual policy could issue without submission of evidence of insurability. *Id.*, at 6–7, ¶ 23.

Plaintiff claims that Defendants' alleged mishandling of Guy Barnette's request to port his life insurance and failure to inform him of his other options under the Policy constitute breaches of fiduciary duty. She has alleged a claim solely pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff seeks the following equitable relief:

> (1) an equitable surcharge for unjust enrichment to recover the benefits loss [*sic*] or withheld and to make the ERISA beneficiary whole, (2) reformation of the Plan to the extent needed to equitably address and pay her claim for the entirety of the life insurance benefits that she should be entitled to, and (3) waiver or equitable estoppel preventing Sun Life, Heico, and the Plan from relying on the misinformation or the failure to give correct and accurate information to the Barnettes as grounds for denial [of] her claim for life benefits.

Amended Complaint [Doc. # 9], at 9, ¶ 31. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint for failure to state a legally viable claim.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Rule 8 "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to

relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

## III. ANALYSIS

### A. Relevant ERISA Provisions

Section 502 of ERISA, 29 U.S.C. § 1132, provides causes of actions to participants, beneficiaries, and government actors to enforce the terms of ERISA. The first and third of these causes of action are at issue on the current Motion:

> A civil action may be brought—
>
> (1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> * * * *
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

In the Amended Complaint, Plaintiff pleads a claim for equitable relief pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3). Defendants contend, however, that Plaintiff's claim is properly characterized as a claim for benefits under the terms of the plan pursuant to § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

### B.     Claims for Benefits Under an ERISA Plan

To bring a claim for benefits under an ERISA plan pursuant to § 502(a)(1)(B), a plaintiff must first exhaust her administrative remedies. *Bourgeois v. Pension Plan for Empls. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000) ("This court requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits."). It is undisputed that Plaintiff Barnette did not initiate any administrative proceedings under the Plan and therefore would be barred from bring a claim under § 502(a)(1)(B).[2] Plaintiff concedes she does not have and does not assert a claim under § 502(a)(1)(B) for Plan benefits.

Defendants argue that Plaintiff has recast a claim for benefits as a claim for equitable relief to avoid the exhaustion of administrative remedies requirement. The Court disagrees for reasons explained below.

### C.     Equitable Breach of Fiduciary Duty Claims Under ERISA

A plaintiff cannot recover on a claim under § 502(a)(3) where relief is available under § 502(a)(1)(B). *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604 (5th Cir. 1998). The structure of § 502(a) suggests that the catchall provisions of this section, § 502(a)(3) and (5), "act as a safety net, offering appropriate equitable

---

[2]     Therefore, there is no administrative record in this case and no administrative decision for the Court to review.

relief for injuries caused by violation that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The term "equitable relief" has been interpreted narrowly. *See, e.g.*, *Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204 (2002). In that section, the term "appropriate equitable relief" refers to "'those categories of relief' that traditionally speaking (*i.e.*, prior to the merger of law and equity) 'were *typically* available in equity.'" *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006)). For example, a claim for damages that are, in substance, compensatory is not cognizable under § 502(a)(3) because such damages are a form of legal relief. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*)).

Plaintiff concedes that she is not entitled to benefits under the terms of the Plan. Response [Doc. # 20], at 6–7.[3] Plaintiff does not allege that any term of the

---

3   A plaintiff proceeding under § 502(a)(1)(B) must identify the provision of the underlying ERISA plan on which it is based. *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 778 (S.D. Tex. 2014) ("[T]o assert a claim for benefits under ERISA, a plaintiff must identify a specific plan term that confers the benefits in question."); *see also Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12-CV-1607-O, 2014 (continued…)

9

Plan entitles her to benefits. To the contrary, she acknowledges that, under the written Plan documents, her husband was not covered by a Sun Life insurance policy at the time of his death. *See* Amended Complaint [Doc. # 9], at 5, ¶ 18. She instead seeks redress because of alleged failures by Defendants' employees in dealing with her requests to exercise rights under the Plan to obtain post-employment coverage for her husband.[4] Her only option is resort to § 502(a)(3).

Misrepresentations and misinformation by a fiduciary may give rise to a breach of fiduciary duty claim under ERISA. *See Varity Corp.*, 516 U.S. at 493, 515 (permitting § 502(a)(3) claim based on misrepresentations regarding solvency of subsidiary to which plan participants transferred their employment and benefits); *Gearlds*, 709 F.3d at 452 n.1 (noting that "allegations of affirmative misrepresentations at least plausibly alleged a breach of fiduciary duty" (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir.

---

(continued…)
WL 10212850, at *4 (N.D. Tex. July 21, 2014) ("While the Fifth Circuit has not addressed whether a plaintiff bringing an ERISA claim must identify specific plan provisions that confer the benefits in question, district courts within the Fifth Circuit, including this Court, have imposed this pleading requirement on plaintiffs.").

4     *See Varity Corp.*, 516 U.S. at 515 ("The plaintiffs in this case could not proceed under the *first* subsection because they were no longer members of the . . . plan and, therefore, had no 'benefits due [them] under the terms of [the] plan.' § 502(a)(1)(B). They could not proceed under the *second* subsection because that provision . . . does not provide a remedy for individual beneficiaries. They must rely on the *third* subsection or they have no remedy at all." (citation omitted)).

1995))); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 424 (5th Cir. 2003) ("[A]n employer, if it chooses to communicate about the future of a participant's plan benefits, has a fiduciary duty to refrain from misrepresentations"). The alleged acts by Defendants' representatives underlying Plaintiff's claim are consistent with the characterization of her claim as one based on breaches of fiduciary duty.

Indeed, at least for present purposes, Defendants do not dispute the allegations that they are fiduciaries under ERISA and that they breached their fiduciary duties to Plaintiff.[5] Instead, Defendants press the argument that Plaintiff's requests for relief are inconsistent with the equitable relief authorized by § 502(a)(3).[6] Defendants also argue that Plaintiff cannot allege facts to support the

---

[5] Because Defendants have only disputed Plaintiff's characterization of her claim as one for equitable relief, the Court does not reach the question of whether the Amended Complaint states a plausible claim for breach of fiduciary duty the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564–65 (2007), and *Iqbal*, 556 U.S. at 678, as tested by Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion generally states that Plaintiff only makes "vague assertions" about the conduct by Sun Life alleged to constitute a breach of fiduciary duty. Doc. # 13, at 11. Defendants do not meaningfully argue, however, how the allegations in the Amended Complaint are legally insufficient to state a § 502(a)(3) claim.

[6] In their opposition to Plaintiff's § 502(a)(3) claim, Defendants rely heavily on *Innova Hospital San Antonio L.P. v. Blue Cross and Blue Shield of Georgia, Inc.*, Civ. A. No. 3:12-cv-1607-O, 2014 WL, 10212850 (N.D. Tex. July 21, 2014). In that case, multiple healthcare providers brought reimbursement claims under both § 502(a)(1)(B) and § 502(a)(3), among other provisions, but failed to identify facts applicable to each type of cause of action. The Court therefore dismissed the § 502(a)(3) claims as impermissibly duplicative of the § 502(a)(1) claims and inadequately pleaded.

(continued…)

11

requirements for estoppel under ERISA. The Court concludes that Plaintiff states a claim under § 502(a)(3).

### D. Relief Sought

The Court turns to the relief Plaintiff seeks and concludes, as explained below, that Plaintiff's requested remedies are equitable in nature, but agrees with Defendants that Plaintiff cannot pursue an estoppel theory.

#### 1. Request for a Surcharge

Defendants contend that Plaintiff's request for monetary relief reveals that her claim is in substance a § 502(a)(1)(B) claim for benefits under the Plan. In *CIGNA Corporation v. Amara*, however, the Supreme Court clarified that traditional principles of equity allow for monetary relief pursuant to § 502(a)(3) under certain circumstances. 131 S. Ct. at 1880; *see also Gearlds*, 709 F.3d at 452 (explaining that, under *Amara*, the mere fact that a plaintiff only seeks "money

---

(continued…)
The *Innova* ruling is inapposite to the question of how to characterize Plaintiff Carolene Barnette's claim. The plaintiffs in *Innova* merely asserted general information they contended supported claims *simultaneously* under § 502(a)(1)(B) *and* § 502(a)(3).[6] These plaintiffs also failed to allege specific facts on any of their causes of action, contending there were too many different patients, insurance policies, and reimbursement claims for such detailed pleadings. Here, Plaintiff alleges facts relating to and only seeks relief pursuant to § 502(a)(3). *see Biller v. Prudential Ins. Co. of Am.*, Civ. A. No. 1:13-cv-03495-RWS, 2014 WL 4230119 (N.D. Ga. Aug. 26, 2014) (declining to dismiss § 502(a)(3) claim where plaintiffs had "concede[d] they [we]re not entitled to benefits under the terms of [decedent's] life insurance plan because she did not complete the conversion form on time")

damages . . . . is not the end of the inquiry into equity"). "Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty . . . ." *Amara*, 131 S. Ct. at 1880. The *Amara* Court focused on the traditional equitable relief of "surcharge" as a remedy for breach of fiduciary duty by a trustee. 131 S. Ct. at 1880 ("Indeed, prior to the merger of law and equity, this kind of monetary remedy against a trustee, . . . a 'surcharge,' was 'exclusively equitable.'"). "A surcharge is an imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of fiduciary duties." 76 AM. JUR. 2d *Trusts* § 334 n.1 (2016). The Supreme Court concluded that the defendant in *Amara* was analogous to a trustee, so monetary relief was available in equity as a surcharge. 131 S. Ct. at 1880; *see also F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1142 (9th Cir. 2001) ("In rarer instances, surcharges are assessed against individuals who hold positions of trust similar to a trustee.").

Plaintiff explains that she seeks a surcharge as an equitable remedy for Defendants' alleged breaches of fiduciary duty for failing to meet their obligations to respond correctly and in a timely manner to her inquiries about her husband's post-employment life insurance coverage options and, as promised, to send necessary forms promptly for porting her husband's coverage. *See* Response [Doc. # 20], at 4–5. Ultimately, among other issues, the Court must address whether

13

Defendants through their employees acted as fiduciaries against whom equitable monetary relief may be available or as non-fiduciaries who are subject to legal monetary damages. This distinction is crucial. *See Amara*, 131 S. Ct. at 1880 ("[I]nsofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference."). Defendants, however, did not raise this issue in the Motion.[7]

Following *Amara*, it is clear that Plaintiff's request for monetary relief in the form of an equitable surcharge is consistent with a § 502(a)(3) claim. Defendants' contention that this theory of relief indicates that Plaintiff's claim is effectively a § 502(a)(1)(B) claim is rejected. The Motion to Dismiss is therefore **denied** with respect to Plaintiff's request for an equitable surcharge.

### 2.   Request for Plan Reformation

In addition to her request for an equitable surcharge, Plaintiff seeks "reformation of the Plan to the extent needed to equitably address and pay her claim for the entirety of the life insurance benefits that she should be entitled to."

---

[7]   As noted above, Defendants do not dispute here that Plaintiff has properly alleged that they are ERISA fiduciaries. *See Gearlds*, 709 F.3d at 451 ("The [Supreme] Court believed it 'critical' that the *Amara* defendant's position as a fiduciary was analogous to a trustee . . . ."). Construing the Amended Complaint in the light most favorable to Plaintiff, *see Harrington*, 563 F.3d at 147, the Court deems Plaintiff to have alleged that Defendants are ERISA fiduciaries analogous to trustees. *See* Amended Complaint [Doc. # 9], at 7–8, ¶ 27.

Amended Complaint [Doc. # 9], at 9, ¶ 31. Defendants challenge Plaintiff's request for equitable plan reformation. They contend this relief is essentially a request for Plan benefits, relief that would constitute a § 502(a)(1)(B) claim. *See* Motion [Doc. # 13], at 6. The *Amara* Court explained that a request for reformation of the terms of the Plan is properly sought through a § 502(a)(3) claim. *Id.*, at 1879.[8] Where a plaintiff pleads a § 502(a)(3) claim, reformation is a possible form of relief. The Motion to Dismiss is therefore **denied** as to Plaintiff's request for equitable relief in the form of plan reformation.

### 3. Request for ERISA Estoppel and Waiver

Plaintiff also seeks "waiver or equitable estoppel preventing Sun Life, Heico, and the Plan from relying on the misinformation or the failure to give correct and accurate information to the Barnettes as grounds for denial [of] her claim for life benefits." Amended Complaint [Doc. # 9], at 9, ¶ 31. Defendants have moved to dismiss Plaintiff's request for estoppel, *see* Motion [Doc. # 13], at 11–15, which request Plaintiff has not meaningfully opposed. Defendants have not moved for dismissal of Plaintiff's waiver request. However, Plaintiff does not explain her waiver argument as distinct from her request for equitable estoppel.

---

[8] The Supreme Court held in *Amara* that § 502(a)(1)(B) does *not* authorize a court to "alter" the terms of a Plan, "at least . . . , where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy." 131 S. Ct. at 1876–77.

The Court therefore focuses on the legal requirements for estoppel in the context of ERISA claims.

The elements of an ERISA estoppel claim are "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005). The Fifth Circuit has made clear that a party may not rely on an oral modification of a written plan's terms. *Id.*, at 445–46. Such reliance is, as a matter of law, not "reasonable and detrimental reliance" for purposes of ERISA estoppel. *Id.*, at 446. It is undisputed that the Portability Rider to the Policy provides that the life insurance coverage must be converted to individual coverage within 31 days of termination of the Plan participant's employment. *See* Policy [Doc. # 13–1], at ECF page 74.[9] Similarly, Plaintiff's claims that Defendants failed to inform her or her husband about other coverage options contained in the Policy are unavailing. These complaints are based on provisions written in the Policy that was available to the Barnettes.[10] Plaintiff's reliance on

---

[9] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) ("On a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.' The court may also consider documents attached to . . . a motion to dismiss . . . when the documents are referred to in the pleadings and are central to a plaintiff's claims.").

[10] *See* Policy [Doc. # 13-1], at 32–34 (ECF page 34–36) (Accelerated Benefit, Continuation of Life Insurance Coverage, and Conversion Privilege provisions).

ERISA estoppel therefore fails. The Motion to Dismiss is **granted** with respect to Plaintiff's request for equitable relief in the form of ERISA estoppel.

The Court notes that ERISA estoppel and equitable surcharge are distinct theories and forms of relief. *See Gearlds*, 709 F.3d at 453 ("Because relief is available under the surcharge doctrine under *Amara*, we do not address the equitable estoppel claim). *Amara* instructs that detrimental reliance is not essential to a claim for equitable surcharge for breach of fiduciary duty by a trustee. 131 S. Ct. at 1881 ("Nor did equity courts insist upon a showing of detrimental reliance in cases where they ordered 'surcharge.' Rather, they simply ordered a trust or beneficiary made whole following a trustee's breach of trust."). Dismissal of the estoppel theory is not dispositive of the equitable surcharge claim.

### E.    Leave to Amend

Defendants argue that the Amended Complaint mixes terminology of a § 502(a)(1)(B) claim with language for a § 502(a)(3) claim. For example, the Amended Complaint states that "[t]his is an action to recover, among other things, life insurance benefits owed on the life of Guy Barnette." Amended Complaint [Doc. # 9], at 3, ¶ 9. Plaintiff concedes that she has been "inarticulate" in describing her claim. Sur-Reply [Doc. # 22], at 1. Plaintiff requests "leave to amend to clear up any . . . ambiguity" about the nature of the claim she asserts. Response [Doc. # 20], at 7. Plaintiff is **granted** leave to replead her § 502(a)(3)

17

claim. Plaintiff is restricted to pleading a § 502(a)(3) claim and may not assert any § 502(a)(1)(B) theory for benefits under the Plan. Plaintiff must plead with specificity each of the theories and forms of relief she seeks, but may not include an ERISA estoppel theory.

## IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that Plaintiff's claim is properly characterized as seeking equitable relief under § 502(a)(3) of ERISA. Her request for ERISA estoppel, however, is foreclosed by the express terms of the Policy. It is therefore

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 13] is **GRANTED** to the extent it requests dismissal of Plaintiff's request for estoppel and is **DENIED** as to the balance of Plaintiff's claims. It is further

**ORDERED** that Plaintiff Carolene Barnette is **GRANTED leave to amend** her First Amended Complaint [Doc. # 9] in accordance with the rulings in this Memorandum and Order by **April 22, 2016**.

SIGNED at Houston, Texas this 7TH day of **April, 2016**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE